Ms. Burke for the appellant, Ms. Heifetz for the athletes. Ms. Heifetz for the athletes. Good morning, Your Honors. May it please the Court, Lauren Burke arguing on behalf of Appellant Judicial Watch. This appeal stems from the government's refusal to disclose five memoranda memorializing the legal justifications surrounding issues on the raid on Osama Bin Laden's This Court should find in favor of the appellant for two reasons. First, the memos do not meet the criteria of exemptions asserted. Appellee has asserted Exemption 5, Exemption 1, and Exemption 3. Unfortunately, they have not sustained the specific details required to assert the privileges asserted. And second, the government avoids providing any substantial information to make an adequate determination about the memos for this Court to determine whether or not the exemptions asserted are adequate. So why doesn't Exemption 5 apply in light of this Court's decision in the In Re Sealed Case 121, Set 3, 1997? Correct. The In Re Sealed Case records that were requested are actually quite different than the records that are requested here. The memos are, in the case at issue, are post-decisional. And we've said that doesn't matter. It doesn't matter that they're post-decisional. However, it's the nature of the records that are being sought. In In Re Sealed, they were notes and justifications contemporaneous of telephone calls. They reflected internal communications. The President's trying to decide what to do. And he wants some legal advice. Yes. And that is exactly what he did here. The President and his advisors specifically sought legal advice on five specific topics of what U.S. and international law was to determine whether or not the actions they were going to take would adequately be under U.S. and international law justification. Post-decision, post-rate, they have publicly touted that such action and conduct and operation was fully supported, authorized under law internationally and under U.S. law. And it is now, upon request by the public, that they refuse to release those. So you draw a distinction between an aide's notes and an aide who has legal training notes. I do. I do. At the risk of sounding a little bit elitist, attorneys do have a responsibility, an oath, an obligation to uphold and enforce justice regardless of what facts may be, what their client may want. They are to research, report, and provide advice based on the law. It's separate and distinct from an employee or a historian that may potentially be at risk for changing what they write or what they record in memos reported on discussions that were made within and among their own colleagues. So in our opinion, we said that an adequate showing of need could overcome the exemption. What is the adequate showing of need here? I would argue that it doesn't necessarily reach need showing. However, if it were to be determined, we have a little bit more information provided by the government as to when, how, what, who was involved, proximity of several people. Well, you know when. You know who. We don't, actually. We know who the authors were. Do you know who these people were by their titles? We do. They are top experts in their field. They were specifically told there were five of them to address. And so given our opinion in the sealed case, what is the significant showing of need or disclosure? The public has a right to know the justification that is being publicly touted by the government that the actions taken were legally justified. So it's the public's general right to know? Correct. Notwithstanding Congress's decision that that right was qualified by certain exemptions. Certain exemptions must meet certain criteria. And I'm asking you, where is the significant showing of need? The significant showing of need is that the burden is actually on the government to show that an exemption applies, the criteria has met. I know. All I'm getting at is this panel is bound by what we said previously about Exemption 5. Is it not? It is. And so don't you have to overcome in some way that interpretation or show how you fall within the interpretation that was given? We do have to overcome that if the government has met their burden, which is my argument that they have not met that burden. They have not provided adequate details for this court to make a reasonable determination that the exemptions asserted apply. They make very broad-based assertions in their declarations but do not provide the specific details with regard to presidential privileges. The deliberative process does not seem to apply in that it was not an interagency deliberative discussions where at the very least, if it were, their declarations don't support such an assertion. And so just to get back to where we started, the argument for why these communications don't fall within the presidential communications privilege has to do with the fact that they're legal advice? Is that your – because they are – according to the declaration, they are communications to the president. According to the declaration, they fall – they are to the president or his advisors. I think it says to the president and his advisors. So I assume that you're taking as a given and we take as a given that these were communications to the president. For argument's sake, I will concede that. There is an argument to know whether or not and when, how, and through what method that those communications reach the president. As far as – the argument is not that because it is legal advice, therefore, falls outside of the presidential communications privilege. It's that it's not legal advice that would be protected by a privilege under Exemption 5, whether it's attorney-client or presidential communications. The justification memos are statements of law, of legal authority. They are memos that specifically were assigned to the top attorneys. They happen to be attorneys because they were seeking legal authority for specific facts to know that they could authoritatively proceed in a certain direction or not proceed in a certain direction. It's outside the scope, I would say, of advice and more inside the scope of providing legal authority of expertise. I don't – I guess I don't understand the difference between advice and legal authority because it seems like when you're advising somebody about whether what they want to do is lawful, it does have to do with legal authority, but it's also advice. What is it about this particular type of advice that takes it outside what – Outside the scope of the privilege for presidential communications. The privilege of presidential communications encompasses the deliberations. This happens to be, in the sense that it is advice, was not a back-and-forth discussion. It did not encompass the give-and-take of policy and lawmaking, which traditionally encompasses deliberative process. Rather, it was more on the – it would be more in relation to almost factual, actual legal authority. provided to the team that then continues to deliberate. I want to make sure I understand your argument just because the scope of the presidential communications privilege is something that we need to take into account when we decide this case. So isn't it legal advice about legal authority can be part of deliberations? It seems like that's a natural part of deliberations. Often when somebody is trying to make a decision about whether to undertake a particular course of conduct, one part of the deliberations that attends the decision is, what's my legal authority? Where are we in terms of lawfulness? So it seems like it naturally could be part of the deliberative process that's undertaken by the decision maker. And I agree with the term that you're using in the sense that you're using could be part of a deliberative process. And there are cases and the prison council has said cases where legal advice is part of the deliberative process. And certainly those facts encompass that. That is not the case here, or at the very least, we don't have enough information. All we know is that five top advisors were provided with five single issues. They went to work. They researched. They provided legal authority. My understanding, potentially, is that they grieved someone. And then after the raid, the memorializations were placed down. It is the government's argument that these post-decisional memorializations reflect those. Let me just ask you, there's one sentence I'm focused on in the declaration. And this is the Shiner, paragraph 8 on page 22 of the Joint Appendix. And within that paragraph, about two-thirds of the way down on the page, this advice, meaning the advice in the memorandum, served as one consideration, among others, weighed by the president and his national security advisors in advance of the president's decision to authorize the raid on bin Laden's compound. So it is part of – according to this, it's part of the advice that was weighed by the president. In advance of the decision. That sounds like deliberation. That sounds like part of the deliberative calculus was embodied in these memoranda and the president's consideration there, too, but no. I think the distinction here, and I recognize what you're saying, is this advice served as one consideration. Yeah. The deliberative process was on the part of the advisors and the president in making the final determination, final decision on how to act. In doing so, they do take legal authority, all of that, but that legal authority and what comes together was not a deliberative process, per se. It was the creation of legal authority that was briefed, and then the deliberative process proceeded and decision was made and all that sort of thing. The distinction here and the request that was being made is specific not to any part of the deliberative process or the discussions or the back and forth or the give and take, but rather what is the legal authority that they continue to say we acted with full, confident legal authority. We are arguing that the public has a right to know what is your legal authority. You were tasked to say here is the issue, what is the legal authority, to act or not to act. Is it legal or not legal? It wouldn't reveal any secret deliberations or alternative that may have been discarded because it's legal authority. It wasn't within the realm of the government or the president or his advisors to discard. It was the law. It wasn't contemplation of what the law should be or what the policy should be. It was clear legal statement what the law is. Well, the government also makes the argument, and you've seen enough legal opinions to know this, that sometimes confidential factual considerations are intertwined with the legal advice that's given and they say, well, if you go with option A, here's what we think. If you go with option B, here's what we think. We don't know. That is correct. And you're positing this as though Congress had passed a statute that says the president shall not 1, 2, 3, and the president did 1, 2, 3, and it may not be as simple as that. Would you agree? The hope is that the legal justification says, given the facts which have been revealed to the public, we know the topic of each issue given to each individual expert attorney, given these facts, can we act this way? The answer is yes because that is the result of how they acted. If they did not or the legal authority goes in the opposite direction, I think that is also within the public interest, and it's becoming a little bit nerve-wracking to us why they go to such lengths to avoid it. We don't know what the memoranda says, but suppose that the memoranda says something like this. My opinion is that the legal authority to go forward is the following. We've had a lot of discussions about this. There's some disagreement amongst us, but my view, and I'm the person who's ultimately charged with giving you legal advice, is that the better reading of the following three sources of legal authority supports your authority to go forward and do this. It's not a fact about the world. It's just somebody – like what lawyers do all the time is I can give you the citations. I'll read the same cases you do. Here's my interpretation of them, and here's why I think they stand for the proposition that you can go forward. That sounds like the type of advice that's part of deliberations that comes within the compass of things that we would think might stay confidential because if they were to be disclosed, it would tend to stifle that kind of exchange. If I may answer. I understand exactly what you're saying because we don't know what they say. We have posed those questions to the government on numerous occasions. They've had to issue a notice of clarification. There was some confusion. The difficulty here is that the government has not provided evidence or statements saying that, and the declarations that they have provided are very general. They simply say that this involved the presidential office and involved a decision being made by them, and therefore it's covered, and I don't believe that that actually reaches the intent of Congress in transparency and open government. There needs to be more. They need to say here's the five authors or here are the people involved, here were those being briefed. It goes beyond just straight legal research and authority. It contains opinions such as you're describing. All right. Let's hear from the government and get some time on the rebuttal. Good morning, Your Honor. Samantha Heifetz for the United States. The memoranda that are at issue here, as the Court has been discussing, they were the result of questions that were posed by the President and his top legal advisors asking about scenarios being contemplated in connection with a possible raid in Pakistan targeting bin Laden. And those questions were taken, they were examined, and opinions were given. The President was briefed on the views that were formed by those who looked into these particular questions, and the particular documents that are at issue here memorialized the advice that was given. This kind of process falls within the heartland of all of the Exemption 5 privileges that we have invoked here, and the District Court recognized that. Presidential communications privilege, deliberate process privilege, attorney-client privilege. Nothing that's been said here cuts in any way or undermines that in any respect. So pressing a little. Suppose this memo is in fact said, you know, the United States has entered into a U.N. convention that says you can't invade the airspace of Pakistan. And that's one memo. And another memo is along the lines Judge Sreenivasan was exploring with counsel. Does it matter is my question. And the second aspect of that is at what point is there an obligation to examine the documents in camera to determine what we have here. Well, to start with the second question and then go back to the first, I think the District Court here did not see any need to look at the documents in camera. And I think that that's quite correct here where there is actually declarations that do provide, as the District Court noted, all of the necessary context to understand. It doesn't answer the first question. So the first question of exactly what the nature of the opining on, I think the District Court recognized that given the type of questions that are at issue here, it would be quite frankly quite difficult to imagine that it could be a simple connecting point A to point B as Judicial Watch has suggested. But even if it were, the point here is really that these are attorneys providing their views. And even if the particular attorney thought that it was a simple point A to point B, that in and of itself would simply be the view of that attorney. So it's not the view of the State Department, legal counsel? No, Your Honor. These were decisions that ultimately were to be made by the President. And so much as this Court discussed in Electronic Frontier Foundation, just because someone can opine on and provide input about what the legality or the advisability would be of a particular course, that's not the same as more authoritatively to what the policy is. How should this Court draw the line? That's what I'm trying to understand. I mean, for instance, the Office of Legal Counsel and the Department of Justice issues opinions all the time. Are they involving potential actions by the executive branch? Well, this Court's – certainly this case is, I think, on the spectrum of a simple one. But this Court's precedents are instructive, and we do not have here, and there is not even an allegation of anything that looks remotely like express adoption of a particular view. There are scenarios where particular views, if expressly adopted by the decision maker, might become subject to disclosure. And this Court has talked about that in cases like Electronic Frontier Foundation, like Access Reports versus the Department of Justice all the way back in 1991. But here, that's not even part of the conversation. There's nothing here that tells us that that was what was going on. This notion that these were so-called justification memos, referring to these as justification memos, is simply a term that Judicial Watch has employed. That's not what the government has ever referred to these memoranda as. The government hasn't made specific reference to these memoranda. What we have explained in our declarations and in the briefs and in the briefs below is that the government was contemplating all of the potential legal consequences of taking a variety of courses of action in connection with this possible operation. And so legal advice was prepared for the decision maker, ultimately the President, was briefed to the President and his top national security advisors, and was memorialized in these memoranda. Do we know from the declarations whether any course of action other than the one taken was analyzed or referred to? A course of action other than the one taken? I mean, there were a variety of possibilities. There's always the no-action possibility. There's always the no-action possibility. That's right. Any other?  A range of possible approaches. What do we know from the declarations that there is? Well, for example, in the CIA declaration, I don't think that there's specificity about what the options were for obvious reasons. There's a reference to options. But there is a reference to options, yes, Your Honor. In Paragraph 9, the advice sets forth the factual background and the potential legal consequences of taking a certain course of action in connection with the operation, and then each of the memoranda is discussing different possibilities. And in Paragraph 8, it's the plural form, so taking certain courses of action. Because, of course, in each of these scenarios, there were a variety of ways in which one could have proceeded. I'm looking at Paragraph 8. What should I see here? Sorry, Your Honor? What in Paragraph 8 should I look at? The memoranda memorialized legal advice that was briefed to the President and his closest advisors for the purposes of providing an understanding of the legal implications associated with taking certain courses of action. And in Paragraph 9, the advice is not an authorization to conduct a given activity, but rather one step in the executive branch deliberations determining legally available options associated with the then-proposed raid. And then it goes on to discuss, of course, the ways in which the concerns here are all particularly acute, given the specifics of the scenarios that were being contemplated. But I don't think there's any suggestion here that there was only a single course being considered. No, I agree. You just pointed it out. Okay. I think that might be consequential material. We heard from counsel for the plaintiff that implicitly portraying this as, well, here's the course of action, here's the legal authority, and that's the end of it. When, in fact, if there's a weighing of options, that seems to me to be more obviously in the realm of advice. I think that's right, Your Honor. And that, as well, there's always a range of ways in which the legality of any given option may be viewed. So it's also inaccurate to suggest that one would expect memos of this kind to be the kind of connecting of the simple connect-the-dots or paint-by-number approach that Judicial Watch has suggested here. So let me just be clear. I understand your point, and following up on Judge Ginsburg's point, options. One of the memos might simply say, Option A would not be legally authorized action, period. Of course. And cite four Supreme Court cases. And that's all it says. Do we care? That's what I'm trying to understand. No, Your Honor. No, no. I shouldn't say do we care. Even if in analyzing a particular scenario, one of these authors thought that things were, in fact, quite straightforward and the advice was given was very direct. What matters here is it's still legal advice being provided during a deliberative process in communication with the President. It still falls within the heartland in every respect, because it is not a final decision that would take it outside the deliberative process privilege. It's nothing other than confidential legal communications between a client and his attorneys. It's also clearly then presidential communication. And for the reasons that we've been discussing, it's part of this larger deliberative process. Nothing about the fact that a particular memo might seem particularly straightforward would take it outside the realm of any. Where does the doctrine about concern about secret law come into play? So secret law is really very different from what we have here. Secret law is where you've got the creation or determination, and this is quoting this court, of the substantive rights and liabilities of a person, where you have something that effectively has the force, the effect of law. The cases that this court has decided in this area are very helpful to the government here, because they really point to the correctness of the district court's decision. Cases like Afshar v. Department of State, where a decision was at issue regarding the Iranian embassy, and the court made clear that nothing about that State Department opinion would constitute secret law or working law for all of these reasons. It wasn't creating or establishing the rights of a person. It wasn't establishing precedent that was going to be applied going forward to members of the public in proceedings. That was what you had at issue in cases like coastal states and tax analysts, where you have an agency like the IRS issuing a memo that says, this is what tax code means in this scenario. We want it to be applied uniformly going forward, so we're going to send it out to the field. We're going to expect people to follow it. It's going to affect various members of the public who come forward who have cases that implicate this particular decision. It's going to be routinely used by agency staff. It's going to be disseminated for that reason. Here we have confidential communications that are not disseminated whatsoever, that don't have precedential value, that weren't controlling of the President's decision at the time, let alone precedential for future decision making. So if the President takes legal advice and then says, I'm deciding to go forward based on the advice I got in memo A, then the decision to go forward is grounded in the legal authority that's memorialized in memo A. Then that seems like that's law that governs the situation. This court has been quite clear, as well as the Supreme Court for that matter, that for that to be true, to have adoption, it really has to be expressed mere reliance. So cases like ABTU versus DHS in this court, cases like Sears in the Supreme Court, make it very clear that simply merely acknowledging that you received advice that might have supported the decision wouldn't get you there. Certainly we have nothing even of that sort here that makes reference to these memoranda. So there's been no public statement by the government that there was reliance on these memoranda for any particular purpose. This notion, again, of these being justification memos is without basis. It's not to say, Your Honor, that you couldn't have a case where the particular facts would get you to the conclusion that there had been adoption, but this court and the Supreme Court, the Second Circuit, the Fifth Circuit, have all been very clear that what it takes to get there is very significant and specific. But if you have adoption, then it brings into play the secret law. That's right. Well, I mean, it's not – I don't know that you would call it secret law. If there's adoption, you might call it something other than – the secret law, there you might determine that something falls outside the deliberate process privilege because it's final, but it wouldn't necessarily – secret law, again, as this court has described it, is really specific to being agency working law. And here we're talking about decisions of the president, so they still would not fall within what this court has described as secret law because it would – I mean, once you have expressed adoption, there wouldn't be anything secret about it. No, there would be because I'm going to keep it secret. I'm assuming that if we were in agreement that it had been truly adopted and was being put forward. Yeah, but that's always the case with secret law is that we know that it's been – we know that that's the basis – we know that there is a claimed basis of the decision. They're just a decision by the government not to disclose what that basis is. So I'm just assuming the same situation. I think we're getting to the same result, which is that I'm in agreement that there are scenarios that would look very different than the case that we have here where the facts could play out such that a particular piece of agency work product would ultimately – or lawyers' input might be ultimately adopted in such a way that it was subject to disclosure. But nothing in this case implicates any of this court's decisions about so-called secret law or agency working law, nor does it implicate any aspect of the express adoption doctrine that this court has developed and that other courts have developed. Can I just ask one last question? So under Exemption 5, you have – you've put forward three privileges, presidential communications, deliberative process, and attorney-client. The way you describe the presidential communications is – amounts to a specialized application of deliberative process. Well, it's broad. As this court has explained, it's broader than the deliberative process in certain respects. It covers post-decisional materials. Yeah. So it is not limited in the same way that the deliberative process is. Is there a reason that it makes more sense to rely on one of the three rather than the other two? This court – this case really does fall within the heartland of all three. The district court principally relied on the presidential communications privilege and the attorney-client privilege. And with regard to deliberative process, the court essentially didn't engage in an in-depth analysis because of its lengthier discussion of presidential communications. So, you know, we welcome the court affirming on any grounds as the court sees fit. And there's no – you don't see – you don't see if – I'm just hypothesizing – if it were going to go in your favor, you don't see a meaningful distinction between them? There are obviously meaningful distinctions in the scope of the various privileges. But here, do you think they're all equally applicable if the court – given that the district court below specifically engaged in lengthy analyses with regard to presidential communications and attorney-client, that would seem to be the most natural way on which to affirm. But we would welcome affirmance on any grounds. If there are no further questions. Thank you. Thank you. Counsel for the panel? If I may just briefly, Your Honor. Yes. Just to address quickly Judge Srinivasan, your question regarding secret law, and that is a little bit of an issue, and the opposing counsel has raised that it does need – it's very limited, it's very narrow, and it's – secret law addresses liability and rights and government action that affect those liabilities and rights without being publicly disclosed. And I would argue that there was liability and rights that were at issue here. The liability of the United States in making sure that they were acting under law, both internationally and under U.S. law. And they have proceeded with acting and on multiple occasions touted that they did so under law. What law? What is the basis for those actions, for justification of that? And that is where potentially they are acting on justifications that are secret law because we don't know what it is. Counsel stated that in order to qualify for secret law, they would have to expressly state that they acted – the government state what they acted under and then refuse to actually reveal it, such as some of the cases where it is more regulatory and there are policies. However, the government has expressly stated that they act under full authority of the law, and the request here is what is the basis of those actions and what is the authority that you're acting upon. At that point, I would just rest if you have no further questions. I appreciate your time. Thank you. Thank you very much. Thank you. We'll take the case under advisement.
judges: Rogers, Srinivasan, Ginsburg